**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY d/b/a Eugene Good Samaritan Center, Respondent.**

No. 72-1072.

United States Court of Appeals, Ninth Circuit.

April 2, 1973.

Julius Rosenbaum, Washington, D. C. (argued), Peter G. Nash, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, NLRB, Washington, D. C., Robert J. Wiener, Officer in Charge, NLRB, Portland, Ore., Paul J. Spielberg, NLRB, Washington, D. C., for appellant.

William D. Brandt, Salem, Ore. (argued), Robert H. Fraser, Luvaas, Cobb, Richards & Fraser, Eugene, Ore., Herbert B. Galton, Portland, Ore., for appellee.

Before BARNES, MERRILL, and HUFSTEDLER, Circuit Judges.

## OPINION

PER CURIAM.

The Evangelical Lutheran Good Samaritan Society does business in Oregon as the Eugene Good Samaritan Center, a facility which is a "Non-Profit Center for Retired People," and is licensed by the State of Oregon as a 118-bed "Nursing home and a 30-bed Convalescent Hospital."

The Center is licensed under Medicare, as "an extended care facility." One of seven one story buildings, denominated "Wing 700," is recognized as "the extended care facility," usually housing 20 or less residents (out of the usual 20–130 residents of all wings): The 20 usually come from a hospital, and after recuperation, either go home or go to the nursing home area.

The Center has no laboratory, no doctors, and no portable x-ray facilities on the premises; no acutely ill or injured persons are allowed on the premises; nor any surgical or maternity patients. No physician is provided by the Center for any resident; each resident makes his own arrangements for his own personal physician. The Center is administered by the Reverend Frederick Juilfs, and an office manager, one Director of Nursing, one Supervising Registered Nurse, and three additional registered nurses. (These supervise licensed practical nurses, nurses aides and orderlies. The latter work in three shifts interchangeably throughout the Center.)

We have for review several questions; the first and most important being:

Was the Center an "employer" within the National Labor Relations Act, or was the Center exempt as a non-profit hospital, under § 2(2) of the Act?

Originally the Board, in the exercise of its administrative discretion, had declined to exercise jurisdiction over proprietary (profit) hospitals, and nursing homes (either non-profit or proprietary), primarily because of (a) their local nature, (b) the probability that their labor disputes would be regulated by state law, and (c) their insubstantial

impact upon interstate commerce. Flatbush General Hospital, 126 NLRB 144 (1960). Seven years later, in 1967, the Board overruled *Flatbush,* extending jurisdiction to proprietary hospitals with gross revenues of $250,000 per year. Butte Medical Properties, etc., 168 NLRB 266 (1967); and on the same date, exercised jurisdiction over the nursing home industry, if such homes were operated for a profit, and had a gross income of $100,000 per year. University Nursing Homes, Inc., 168 NLRB 263 (1967).

Finally, the Board extended its jurisdiction to *non-profit* nursing homes. Drexel Homes, Inc., 182 NLRB 1045 (1970).

In so extending its jurisdiction, the Board found it necessary to contend with various semantic terms—"rest homes", "homes for the aged", "retirement homes", "convalescent homes", "sanitariums". It solved its problem by determining it would exercise jurisdiction over operations offering *"extended care facilities"*; accepting the American Hospital Association's definition thereof: "an establishment with permanent facilities that include inpatient beds; and with medical services, including continuous nursing services, to provide treatment to patients who require inpatient care but *do not require hospital services."*

■ "Hospital Services" are those ordinarily available only in a general hospital, including facilities for surgery, x-ray, laboratory analysis, obstetrics, and related *specialized* procedures. Wesleyan Foundation, 171 NLRB 124 (1968); Sierra Hospital Foundation, 181 NLRB 869 (1970).

■ The Board determined the appellant was not a hospital within the meaning of § 2(2) of the Act, but was "an extended care facility". We are bound to accept the Board's determination if it has a reasonable basis in the evidence, and is not inconsistent with the law. NLRB v. E. C. Akins & Co., 331 U.S. 398, 403, 67 S.Ct. 1265, 91 L.Ed. 1563 (1947).

Appellant urges that the Board's findings support the Board's ruling, but that the facts do not support its Findings. We hold otherwise.

■ It is true that under the law of the State of Oregon, appellant's Wing 700 was licensed as a 30-bed "convalescent hospital", and the other six units as an 118-bed "nursing home." Reciting the facts hereinbefore listed, and quoting language from Drexel Homes, Inc., *supra,* the Trial Examiner found "that the Center is similar to the establishment involved in Drexel Homes, Inc." (judged by the American Hospital Association's definition (R. 19)), and that it did not supply "general or in most instances any, hospital services." The Trial Examiner apparently strongly relied on the fact that Respondent had no medical staff, per se, but that each patient, if he or she wished, had a personal physician. "The residents and patients of all seven wings of the Center have social activities and religious services available," but not doctors nor any care for those "acutely ill." The Center advertised itself as a center for retired people; that residents may "go and come as you please." The Examiner found that the patients in Wing 700 "except for being closer to the Registered Nurse in charge of the Center, received the same standard of care as other patients or residents of the Center" (R. 22). He also found that Medicare recognized the necessity at times, after hospital care, of care from an "extended care facility". Half of the patients in Wing 700 were in this class, and on Medicare. (Board's Opening Brief, p. 17, note 22).

We cannot rule that the Examiner's findings, in view of the holdings of the cases cited, were not supported by substantial evidence or that they were arbitrary or capricious. We reject the "integral" theory relied on by the Respondent to bring its operation within the hospital exemption, and we affirm the jurisdiction of the Board over the Center's operations.

■■ There is little doubt but that the facts before us demonstrate substantial support for the Board's findings that the Center interfered with, restrained and coerced its employees, in violation of § 8(a)(1) of the Act. A threatened shut-down of the Center and loss of jobs was threatened by Director of Nursing Moore to two of her nurses (Skinner and Anderson), if they persisted in their union support. *Cf.* NLRB v. Gissel Packing Co., 395 U.S. 575, 618–619, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). Nor can we hold, contrary to the Board's findings, that the licensed practical nurses were supervisors. Garden of Eden Home, Inc., etc., 199 NLRB No. 5 (September 14, 1972).

The Board's Order will be enforced in full.